## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

VICTOR REYES, on behalf of himself and all other
similarly situated persons,

CIVIL ACTION

Plaintiffs,

Civil No. 17-4719

v.

SEARS HOLDINGS CORPORATION, SEARS,
ROEBUCK & COMPANY and XPO LOGISTICS,
INC., successor-in-interest to 3PD, INC.,

**CLASS ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

Defendants.

Plaintiff Victor Reyes, on behalf of himself and all other similarly situated persons, complaining against Defendants Sears Holdings Corporation, Sears Roebuck & Company and XPO Logistics, Inc., successor-in-interest to 3PD, Inc., alleges as follows:

## I.       INTRODUCTION

1.       Plaintiff Victor Reyes ("Plaintiff) brings this class action lawsuit on behalf of himself and a class of persons similarly situated, who have performed delivery work for Defendants Sears Holdings Corporation, Sears Roebuck & Company and XPO Logistics, Inc., successor-in-interest to 3PD, Inc., at any time during the applicable statute of limitations period, and who were classified as independent contractors rather than employees. Plaintiff alleges that although Defendants classified him and other similarly situated delivery drivers as independent contractors, they were in fact Defendants' employees under New York Law, N.Y. Lab. Law §§ 190(2) and 862—b. Plaintiff further alleges that he and other similarly situated drivers were not paid proper wages and that improper deductions were made from their wages, in violation of N.Y. Lab. Law §§ 193. Plaintiff also alleges that Defendants made illegal kick-backs of wages in

violation of N.Y. Lab. Law § 198-b and failed to satisfy the notice and record-keeping requirements established by N.Y. Lab. Law §§ 191 and 195.

## II.    JURISDICTION AND VENUE

2.    The Court has personal jurisdiction over Plaintiff and the class he seeks to represent because they are citizens of the State of New York and/or worked for Defendants in the State of New York, including this judicial district.

3.    The Court has personal jurisdiction over Defendants because they do business in the State of New York, including in this judicial district, and their conduct in the State of New York underlies all claims.

4.    The Court has subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1392(d)(2). Taken individually, Plaintiff's claims exceed $75,000 and Plaintiff's class claims in total exceed $5 million.

5.    Venue is proper pursuant to 28 U.S.C. § 1391(b)(2), as a substantial part of the events or omissions giving rise to the claim occurred within Nassau County in the State of New York.

## III.    PARTIES

6.    Plaintiff Victor Reyes is an adult individual residing in Bay Shore (Town of Islip), in Suffolk County in the State of New York and worked for Defendants as a driver from approximately 2008 until 2011.

7.    Defendant Sears Roebuck & Company is a retailer of general merchandise, tools, home appliances, clothing and automotive parts and services ("merchandise").

8.    Defendant Sears Roebuck & Company is a wholly owned subsidiary of Defendant Sears Holding Company (collectively referred to hereinafter as "Sears").

9.      Defendant Sears is a corporate entity headquartered at 3333 Beverly Road, Hoffman Estates, Illinois 60179.

10.     Defendant XPO Logistics, Inc. ("XPO") is a corporation organized and existing under the laws of the State of Delaware with corporate headquarters located at 5 Greenwich Office Park in the Town of Greenwich, County of Fairfield and State of Connecticut.

11.     Defendant XPO provides last-mile delivery services for companies such as Sears.

12.     Defendant XPO provides last-mile delivery services to Defendant Sears throughout the State of New York.

13.     In 2013, Defendant XPO purchased the business, including all of the assets and liabilities, of 3PD, Inc., which itself provided delivery services for Sears and companies like it, within the State of New York.

14.     Upon information and belief, Defendant XPO is believed to be the successor-in-interest of 3PD, Inc. and subject to successor liability for its liabilities in this action because (a) Defendant XPO expressly or impliedly assumed 3PD, Inc.'s liabilities; and/or (b) Defendant XPO is a mere continuation of 3PD, Inc. (i.e. a *de facto* merger); and/or (c) Defendant XPO continues essentially the same operations of 3PD, Inc.; and/or (d) the sale of 3PD, Inc. to Defendant XPO was an attempt to fraudulently evade creditors or escape obligations and liabilities. See Aguas Lenders Recovery Group v. Suez, S.A., 585 F.3d 696, 702 (2d Cir. 2009) (quoting Cargo Partner AG v. Albatrans, Inc., 352 F.3d 41, 45 (2d Cir. 2003)).

15.     Defendants XPO and Sears are joint employers as they jointly maintained control, oversight and direction over Plaintiff and similarly situated drivers.

16.     This is a class action lawsuit that Plaintiff brings on his own behalf and on behalf of all others similarly situated, namely all individuals who have performed delivery services for

Defendants within the State of New York at any time during the applicable statute of limitations period, and who were classified as independent contractors rather than employees (the "class members").

## IV.   <u>STATEMENT OF FACTS</u>

17.    Defendant Sears maintains warehouses throughout the State of New York where it stores its merchandise for delivery. The warehouse where Plaintiff worked out of was located in Syosset in the County of Nassau in the State of New York.

18.    Sears delivers its products to customer's homes as a core element of its business. In order to carry out its deliveries, Sears contracted with 3PD, Inc. and now contracts with Defendant XPO, which in turn contracts with individuals such as Plaintiff and other similarly situated delivery drivers, whom they purport to classify as independent contractors, to drive delivery trucks full-time and deliver merchandise to customer's residences.

19.    During the past six years, hundreds of class members have performed delivery and other transportation related services for Defendants in the State of New York.

20.    Plaintiff and the class members are not free from Defendants' control and direction in performing their work.

21.    Although Defendants classified Plaintiff and the class members as independent contractors, the control manifested over the class members by XPO and Sears demonstrates that they are Defendants' "employees" under the NYLL. The following facts support this claim:

        a) Plaintiff and the class members are required to report to a facility operated and/or maintained by Sears in Syosset, New York by 6:30 a.m., six (6) or even sometimes seven (7)days per week, and other facilities throughout the State of

New York, at which time they are provided with a manifest of deliveries to make.

b) Plaintiff and the class members are required to attend 10 to 15-minute morning meetings with XPO and Sears personnel where they receive instruction on aspects of deliveries such as how to assemble merchandise/equipment and how to interact with customers.

c) Plaintiff and the class members are instructed to load the merchandise to be delivered onto their trucks in a specific order.

d) Plaintiff and the class members are required to make deliveries in the order dictated by daily manifests provided to them by XPO. Plaintiffs are further required to make deliveries in two-hour time windows specified by XPO in the delivery manifests and XPO and Sears specify how long Plaintiffs are given to make each delivery.

e) Plaintiff and the class members are required by XPO and Sears to log the completion of each delivery throughout the day on a cellphone application.

f) Plaintiff and the class members are required to wear uniforms which at times contained the Sears logo and at other times contained the 3PD/XPO logo consisting of a baby-blue colored shirt, navy blue pants and black boots when making deliveries for XPO and Sears.

g) Plaintiff and the class members are required to carry a cell phone so that they may receive calls from XPO and Sears. XPO would contact Plaintiffs during the day with instructions related to cancellations and rescheduling of deliveries.

h) Plaintiff and the class members are required to be in contact with XPO dispatchers regarding the status of deliveries, including whenever there was a problem with a delivery.

i) Plaintiff and the class members are required to return haul-aways, equipment that customers want removed from their homes or businesses after delivery of new merchandise, back to the Sears facility on the same day or immediately the next morning.

j) Plaintiff and the class members are not permitted to use helpers to make deliveries unless those helpers have passed background checks conducted by an agent of XPO.

22.    XPO requires delivery drivers with which it contracts to have or lease a truck that meets specifications determined by XPO.

23.    XPO keeps track of Plaintiffs' performance through customer ratings and posts their scores daily. XPO will suspend Plaintiffs if their rating drops below a certain level.

24.    XPO also requires delivery drivers with which it contracts to obtain insurance, including automobile liability, commercial general liability, umbrella liability, cargo, and worker's compensation coverage, at levels dictated by XPO.

25.    XPO retained the right to terminate the contract with its delivery drivers without cause.

26.    Sears personnel developed the delivery manifests and provided them to XPO who would, in turn, provide the delivery manifests to Plaintiff and the class members.

27.    Upon information and belief, Sears personnel also kept track of customers' ratings and openly discussed these ratings with Plaintiff and the class members at least once per week.

If Sears determines that a drivers' customer ratings are low, it will tell XPO or threaten the driver with termination.

28.     Plaintiff and the class members are required to call into Sears' customer service while they are making deliveries if customers have complaints, need to reschedule deliveries, want rebates for any reason or are upset with the service they received.

29.     Sears' customer service would then instruct Plaintiff and the class members on what steps to take next to satisfy the customers.

30.     Plaintiff and the class members generally are paid on a job-rate basis whereby they receive for each delivery a fixed amount of money paid by Defendants.

31.     Plaintiff and the class members performed or perform work which is in the usual course of business of Defendants – i.e., they perform delivery services and Defendant XPO is in the business of coordinating delivery services of Defendant Sears' merchandise to Defendant Sears' customers.

32.     Plaintiff and the class members do not operate independently established trades or businesses because they are entirely dependent upon Defendants for their work, they do not negotiate with Defendants' customers regarding the rates charged for their services, and they do not contact Defendants' customers independent of XPO or Sears.

33.     Plaintiff and the class members are not permitted to subcontract or assign their rights under their agreement with XPO to another delivery driver.

34.     Due to the full-time nature of their work for Defendants, and because they are required to make deliveries as scheduled by Defendants, wearing a uniform required by Defendants, Plaintiff and the class members do not work for other entities making deliveries while they are working full-time for Defendants.

35.     XPO deducts certain expenses directly from the compensation it pays, including when XPO determines, in its sole discretion, that a delivery has been made in a manner it deems to be unsatisfactory (e.g., damaged goods, damage to customer property). XPO will deduct the costs of such damage from paychecks.

36.     XPO would also deduct other expenses from the compensation it pays such as the cost of truck rental and fuel.

37.     There were also times when XPO would deduct the costs of workers' compensation insurance and general liability insurance from the compensation it paid to Plaintiff and the class members

38.     Defendants unlawfully received kick-backs from Plaintiff and the class members and made a statement or representation that failure to provide these kick-backs would result in termination.

39.     Defendants failed to furnish Plaintiff, as well as the other New York Drivers, with an accurate statement of wages listing hours worked, rates paid, gross wages, allowances, deductions taken, and net wages paid.

### V.     CLASS ACTION ALLEGATIONS

40.     Plaintiff brings this lawsuit as a class action, pursuant to Federal Rule of Civil Procedure 23, on behalf of himself and all similarly situated current and former drivers, namely all other individuals who have performed delivery services for Defendants within the State of New York at any time during the six (6) years prior to the filing of this Complaint to the entry of judgment in the case, and who were classified as independent contractors rather than employees (hereinafter the "Plaintiff Class").

41.     The persons in the Plaintiff Class are so numerous that joinder of all members is impracticable. Although the precise number of such persons is unknown, and facts upon which the calculation of that number can be based are presently within the sole control of Defendants, upon information and belief, the size of the Plaintiff Class is at least 40 individuals.

42.     Plaintiff's claims are properly maintainable as a class action under Fed. R. Civ. P. 23(b)(3). There are questions of law and fact common to the Plaintiff Class that predominate over any questions solely affecting individual members of the Plaintiff Class, including but not limited to:

a)      Whether Plaintiff and the Plaintiff Class were Defendants' employees pursuant to N.Y. Lab. Law §§ 190(2) and 862-b;

b)      Whether Defendants made unlawful deductions from Plaintiff's and the Plaintiff Class' pay; and

c)      The nature and extent of Plaintiff Class-wide injuries and the appropriate measure of damages sustained by Plaintiff and the Plaintiff Class for unlawful deductions.

43.     Plaintiff's claims are typical of the those of the Plaintiff Class. Plaintiff and other Plaintiff Class members were subjected to Defendants' policies, practices, programs, procedures, protocols and plans alleged herein concerning the failure to pay proper wages. Plaintiff's job duties are typical of those of the Plaintiff Class members.

44.     The named Plaintiff is an adequate representative of the class because all potential plaintiffs were subject to Defendants' uniform practices and policies. Further, the named Plaintiff and potential class plaintiffs have suffered the same type of economic damages as a result of Defendants' uniform practices and policies.

45.     Plaintiff will fairly and adequately represent and protect the interests of the Class. Plaintiff's counsel is competent and experienced in litigating large wage and hour class and collective actions.

46.     A class action is superior to other available methods for the fair and efficient adjudication of this litigation – particularly in the context of wage litigation like the present action, where individual plaintiffs may lack the financial resources to vigorously prosecute a lawsuit in federal court against a corporate defendant. The members of the Plaintiff Class have been damaged and are entitled to recovery as a result of Defendants' common and uniform policies, practices and procedures. Although the relative damages suffered by individual members of the Plaintiff Class are not *de minimis*, such damages are small compared to the expense and burden of individual prosecution of this litigation. Moreover, members of the Plaintiff Class still employed by Defendants may be reluctant to raise individual claims for fear of retaliation. In addition, class treatment is superior because it will obviate the need for unduly duplicative litigation that might result in inconsistent judgments about Defendants' practices.

## COUNT I
### (New York Labor Law - Unlawful Wage Deductions)

47.     All previous Paragraphs of this Complaint are incorporated by reference as though fully set forth herein.

48.     Plaintiff and the class members were employees of Defendants pursuant to N.Y. Lab. Law §§ 190(2) and 862-b.

49.     Defendants knowingly, willfully and intentionally violated N.Y. Lab. Law § 193 by requiring that Plaintiff and the Plaintiff Class be subject to deductions from their compensation checks for any alleged damage or problem with any delivery, as well as to deductions for insurance, uniforms, and truck lease payments, among other deductions.

## COUNT II
### (New York Labor Law – Illegal Kickback of Wages)

50.     All previous Paragraphs of this Complaint are incorporated by reference as though fully set forth herein.

51.     Plaintiff and the class members were employees of Defendants pursuant to N.Y. Lab. Law §§ 190(2) and 862-b.

52.     Defendants violated N.Y. Lab. Law § 198-b by requiring that Plaintiff and the Plaintiff Class be subject to deductions from their compensation checks for any alleged damage or problem with any delivery, as well as to deductions for insurance, uniforms, and truck lease payments, among other deductions.

## COUNT III
### (New York Labor Law –Record-Keeping Requirement Violation)

53.     All previous Paragraphs of this Complaint are incorporated by reference as though fully set forth herein.

54.     Defendants failed to supply Plaintiff and the Plaintiff Class with an accurate statement of wages as required by N.Y. Lab. Law § 195, containing the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof; whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; hourly rate or rates of pay and overtime rate or rates of pay if applicable; the number of hours worked, including overtime hours worked if applicable; deductions; and net wages.

55.     Plaintiff and the Plaintiff Class members are entitled to damages of $100 for each workweek that Defendants failed to provide accurate wage statements, or a total of $2,500 per

class member, as provided for by N.Y. Lab. Law § 198, reasonable attorneys' fees, costs, and injunctive and declaratory relief.

## COUNT IV
### (Unjust Enrichment)

56.    All previous Paragraphs of this Complaint are incorporated by reference as though fully set forth herein.

57.    Defendants have been financially enriched by subjecting Plaintiff and the Plaintiff Class members to deductions, charges and/or expenses that typically are borne by employers.

58.    The financial enrichment enjoyed by Defendants has come at the expense of Plaintiff and other class members, all of whom have borne the improper deductions, charges and/or expenses.

59.    It is against equity and good conscience to permit Defendants to retain such deductions, charges and/or expenses.

60.    Defendants should be required to reimburse Plaintiff and the Plaintiff Class members for such improper deductions, charges and/or expenses under the doctrine of unjust enrichment.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, on behalf of himself and the Plaintiff Class, seek the following relief:

A.    Certification of this case as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure;

B.    Designation of Plaintiff as representative of the Rule 23 Class, and counsel of record as Class Counsel;

C.    Pre-judgment interest and post-judgment interest as provided by law;

D.     Appropriate equitable and injunctive relief to remedy violations, including but not limited to an order enjoining Defendants from continuing their unlawful practices;

E.     Attorneys' fees and costs of the action;

F.     Statutory damages, as provided by N.Y. Lab. Law § 198, for Defendants' violations of N.Y. Lab. Law § 195;

G.     Issuance of a declaratory judgment that the practices complained on in this action are unlawful under N.Y. Lab. Law § 198, *et. seq.*;

H.      A reasonable incentive award for Plaintiff to compensate him for the time he spent to recover wage for the Class and for the risks he took in doing so;

I.     Plaintiff's and the Plaintiff Class' damages as provided at trial, including damages for the deductions taken from their compensation checks;

J.     Application of statutory liquidated damages; and

K.     Such other and further relief as this Court deems just and proper.

## JURY TRIAL DEMANDED

Plaintiffs demand a jury trial.

Dated: August 11, 2017                                    Respectfully submitted,

                                                          _____
                                                          DAVID L. SCHER

                                                          David L. Scher
                                                          Ravi Sattiraju, Esq.*
                                                          BLOCK, O'TOOLE & MURPHY
                                                          One Penn Plaza, Suite 5315
                                                          New York, New York 10119
                                                          (212) 736-5300

                                                          Harold L. Lichten, Esq.*
                                                          Shannon Liss-Riordan, Esq.*

Benjamin J. Weber, Esq.*
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, Massachusetts 02116
(617) 994-5800

Plaintiff's Counsel
* *Pro Hac Vice* Admission Anticipated