UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------- x
VICTOR REYES, individually and on
behalf of all others similarly situated,

                        Plaintiffs,

              - against -

SEARS HOLDINGS CORPORATION; SEARS,
ROEBUCK & CO. and XPO LAST MILE, INC.,
successor-in-interest to 3PD, INC.,

                        Defendants.
----------------------------------------------------------- x

**MEMORANDUM & ORDER**

2:17-cv-4719 (RJD) (RML)

DEARIE, District Judge:

Plaintiff Victor Reyes ("Plaintiff" or "Reyes"), on behalf of himself and others similarly situated, brings New York Labor Law ("NYLL") and unjust enrichment claims against Sears Holdings Corporation, Sears, Roebuck & Company and XPO Logistics, Inc. ("Defendants") relating to certain delivery services provided by Reyes and his trucking company, Reyes Trucking LLC, between 2008 and 2011. Specifically, Plaintiff alleges that in providing delivery services for 3PD, Inc., the predecessor-in-interest to XPO Logistics, Inc. ("Defendant" or "XPO"), he was misclassified as an independent contractor, subject to unlawful wage deductions and supplied with inaccurate wage statements. XPO now moves to dismiss the Complaint for lack of subject matter jurisdiction because Plaintiff, who filed for Chapter 7 bankruptcy in 2012, does not have standing to pursue his wage claims. Defendant argues Plaintiff's claims belong to the bankruptcy estate and therefore must be pursued, if at all, by the Chapter 7 trustee. For the reasons that follow, Defendant's motion is granted.

## BACKGROUND

Plaintiff's company, Reyes Trucking LLC, provided delivery services for Sears products between 2008 and 2011 through a delivery contract with 3PD, Inc. (now XPO). Defendant required Reyes to form an incorporated entity as a condition of hiring him for delivery services. Reyes Decl., ECF No. 55-1, ¶¶ 7-8. Plaintiff then signed a contract with Defendant in 2008 stating Reyes Trucking LLC, the "contract carrier," was "engaged as an independent contractor," and performed delivery services pursuant to the contract until 2011. Ex. 3, ECF No. 54-5, at 2, 12. In November 2012, Plaintiff filed for Chapter 7 bankruptcy and did not identify a cause of action or interest in any claim against Defendant in his bankruptcy petition. In 2013, Bankruptcy Judge Grossman entered a final decree discharging Plaintiff's debts and creditor claims in the amount of $365,804.77 and closed administration of the bankruptcy estate. See Bankruptcy Dkt. No. 8-12-76916-reg. Four years later, in 2017, Plaintiff commenced this NYLL action in federal court on the principal basis that as a result of his classification as an "independent contractor" Defendant underpaid him for at least three years.

## LEGAL STANDARD

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000). A plaintiff's standing constitutes "a limitation on the authority of a federal court to exercise jurisdiction" and is thus properly addressed as part of a Rule 12(b)(1) motion. All. For Envtl. Renewal Inc. v. Pyramid Crossgates Co., 436 F.3d 82, 88 n.6 (2d Cir. 2006). Indeed, the district court only has the power to resolve actual "cases or controversies," which require "the presence of adverse interests between parties who have a substantial personal stake in the outcome of the litigation." Brady v. Basic Research, LLC, 101

F. Supp. 3d 217, 227 (E.D.N.Y. 2015). Therefore, a party seeking to litigate a case or controversy must "assert his own legal rights and interests and cannot rest his claim to relief on the legal rights or interests of third parties." Wight v. Bank Am. Corp., 219 F.3d 79, 86 (2d Cir. 2000)

To this end, "a plaintiff must allege facts that affirmatively and plausibly suggest that it has standing to sue" to overcome a defendant's Rule 12(b)(1) motion. Brady, 101 F. Supp. 3d at 227. In ruling on such a motion, the Court "must accept as true all material factual allegations in the complaint and refrain from drawing inferences in favor of the party contesting jurisdiction." Mintz v. Transworld Sys. Inc., 2016 WL 4367221, at *3 (E.D.N.Y. May 16, 2016). The Court may also consider materials outside the pleadings without converting the Rule 12(b)(1) motion into a motion for summary judgment under Rule 56. Id. (citing Pyramid Crossgates Co., 436 F.3d at 88 n.8). "The party advocating jurisdiction bears the burden of establishing its existence by a preponderance of the evidence." Id. at *3.

In the bankruptcy context, the party with "legal rights or interests" in the property of the bankruptcy estate is the bankruptcy trustee, not the debtor himself. Wight, 219 F.3d at 86; see also Chartschlaa v. Nationwide Mut. Ins. Co., 538 F.3d 116, 122 (2d Cir. 2008). This is because when a debtor files a bankruptcy petition, "all legal or equitable interests of the debtor in property as of the commencement of the case" become property of the bankruptcy estate. 11 U.S.C. § 541(a)(1). Property of the bankruptcy estate encompasses "every conceivable interest of the debtor, future, nonpossessory, contingent, speculative, and derivative," and includes "pending and future or potential causes of action." Chartschalaa, 538 F.3d at 122. "Pending and future or potential causes of action" include legal claims that are "complete and present" as of the commencement of the bankruptcy, City of New York v. FedEx Ground Package Sys., Inc.,

91 F. Supp. 3d 512, 521-22 (S.D.N.Y. 2015), or that are commenced post-bankruptcy but are "sufficiently rooted in the debtor's pre-bankruptcy past," Jackson v. Novak, 593 F.3d 171, 176 (2d Cir. 2010).

## DISCUSSION

I. The Bankruptcy Estate, Not Plaintiff, Has Standing to Pursue Plaintiff's NYLL Claims.

*A. Plaintiff's NYLL Claims Accrued Pre-Bankruptcy, Should Have Been Disclosed and Now Belong to the Bankruptcy Estate.*

Defendant argues, and Plaintiff concedes, "that the facts supporting [Plaintiff's] wage and hour claims based on his misclassification as an independent contractor occurred prior to the bankruptcy." Def. Br. ECF No. 54-1, at 6. However, whereas Defendant contends Plaintiff's potential NYLL claims should have been disclosed in Plaintiff's bankruptcy petition and are now part of the bankruptcy estate, Plaintiff argues that because he did not know he had NYLL causes of action when he filed his petition, he was absolved of any disclosure obligation and now maintains standing to pursue his claims in federal court.

For a cause of action to trigger a disclosure obligation the plaintiff-debtor's cause of action must "accrue[] under applicable state law" pre-bankruptcy. In re Ross, 548 B.R. 632, 638 (Bankr. E.D.N.Y. 2016). "[T]he standard rule is that a claim accrues when the plaintiff has a complete and present cause of action," id. (quoting Wallace v. Kato, 549 U.S. 384, 388 (2007)), which exists where "the elements necessary to commence the action under state law [are] present as of the date of Plaintiff's bankruptcy petition," id. at 635. For an unpaid wage claim based on an individual's classification as an independent contractor, this occurs where (i) the Plaintiff "learned that he was being classified as a leased employee or independent contractor," Reches v. Morgan Stanley & Co. Inc., 687 F. App'x 49, 50 (2d Cir. 2017), and, as a result, (ii) is underpaid

4

"on the regular payday immediately following the work period for which services were rendered," Shu Qin Xu v. Wai Mei Ho, 111 F. Supp. 3d 274, 277-78 (E.D.N.Y. 2015).

Plaintiff learned he was classified as an independent contractor in 2008. He signed a contract on April 21, 2008, stating, on the first page, that he was "engaged as an independent contractor." Exhibit 3, ECF No. 54-5, at 2, 12; Reches, 687 F. App'x at 50. Next, Plaintiff was purportedly underpaid as a result of this classification *at the latest* on the "regular payday" immediately preceding the termination of his delivery services in 2011. Shu Qin Xu, 111 F. Supp. 3d at 277-78. However, Plaintiff did not file his bankruptcy petition until 2012—at least a year, if not more, after the facts underlying his NYLL causes of action transpired. Plaintiff's NYLL claims therefore "accrued" pre-bankruptcy because he had a "complete and present" action for unpaid wages prior to filing his petition. Wallace, 549 U.S. at 388; Ross, 548 B.R. at 638. Accordingly, absent an equitable theory that might allow Plaintiff to recoup standing, his NYLL claims should have been disclosed in his bankruptcy petition and now constitute property of the bankruptcy estate, to be administered by the bankruptcy trustee. Kohlbrenner v. Victor Belata Belting Co., Inc., 1998 WL 328639, at *2 (W.D.N.Y. June 3, 1998) ("Because [plaintiff-debtor] filed the Petition after the accrual of her claims against [the defendant], such claims are property of the Estate"); Quiros v. Polow, 135 A.D.2d 697, 699-700 (N.Y. App. Div. 1987) ("The cause of action accrued well before the plaintiff's discharge in bankruptcy and should have been listed...Having failed to properly disclose this unliquidated claim, the plaintiff is precluded from pursuing it"); Schepmoes v. Hilles, 122 A.D.2d 35, 36-37 (N.Y. App. Div. 1986) (dismissing complaint because "[a] bankruptcy debtor may not fail to schedule or withhold from his trustee all knowledge of certain property, thereby precluding the potential benefit of the

property from accruing to his creditors, and then, after obtaining a release from his debts, assert title to the property" (citing First Nat'l Bank of Jacksboro v. Lasater, 196 U.S. 115, 119 (1905))).

### B. Whether Plaintiff Knew or Should Have Known the Legal Significance of the Facts Underlying His NYLL Claims Does Not Change the Status of Those Claims as Property of the Bankruptcy Estate.

Plaintiff argues that whether or not he had and disclosed "complete and present" causes of action pre-bankruptcy should not affect the Court's standing analysis because he was only required to disclose "known causes of action" and he had "no knowledge of his statutory wage claims at the time he filed his Bankruptcy petition" because he did not know he had been misclassified as an independent contractor and "was never advised...that he had potential statutory wage claims based upon a misclassification theory." Pl. Opp. Br., ECF No. 55, at 6-7. As a result, Plaintiff asserts, his claims did not accrue pre-bankruptcy and need not be dismissed for lack of standing. Defendant counters that (i) Plaintiff "conflat[es] the elements of and defenses to equitable estoppel with bankruptcy standing," Def. Br. ECF No. 54-1, at 8, (ii) there is no statutory requirement that a Plaintiff have knowledge of a cause of action for it to accrue pre-bankruptcy, Def. Reply Br., ECF No. 56, at 3, and (iii) in any event, Plaintiff confuses the existence "of *the facts* underlying [his] claim," with whether he understood those facts created *a legal cause of action*, the latter of which is not relevant to the Court's standing analysis, id. at 4.

First, there is no formal "knowledge" requirement to trigger a disclosure obligation under the Bankruptcy Code and Plaintiff's lack of knowledge of the legal significance of the facts underlying his NYLL claims cannot be used to revive standing. Though some courts have articulated "knowledge" in the bankruptcy disclosure context to mean that the plaintiff-debtor "knew or should have known of th[eir] causes of action against defendants prior to commencing the bankruptcy proceeding," Dischiavi v. Calli, 68 A.D.3d 1691, 1692 (N.Y. App. Div. 2009),

6

this articulation obfuscates the fact that what a plaintiff-debtor "should have known" overlaps substantially with whether the plaintiff-debtor's "complete and present action" accrued pre-bankruptcy. Id. (citing Dynamics Corp. of America v. Marine Midland Bank-New York, 69 N.Y.2d 191, 197 (1987) (concluding plaintiff-debtor "knew or should have known of its claims against [defendant]" because plaintiff-debtor "possessed sufficient information to have disclosed these causes of action"); see also Whelan v. Longo, 23 A.D.3d 459, 460 (N.Y. App. Div. 2005), aff'd 7 N.Y.3d 821 (2006) (rejecting "conclusory allegations that a plaintiff did not disclose a cause of action in a prior bankruptcy proceeding because the plaintiff was not aware of the facts giving rise to the cause of action"). The plaintiff-debtor should know of the facts underlying a potential cause of action, absent some act of concealment by the defendant, when those facts come to fruition—the same moment a "complete and present action" accrues. Ross, 548 B.R. at 635 ("complete and present action" existed not when the debtor knew she had a legally cognizable injury but when "the elements necessary to commence an action under state law" were "present"); see also Lapointe v. Target Corp., 2017 WL 1397311 (N.D.N.Y. Feb. 14, 2017) (even if the debtor does not know "the legal basis for the cause of action," debtor will not be absolved of disclosure obligation (citing Sea Trade Co. Ltd. v. Fleet Boston Fin. Corp., 2008 WL 4129620, at *12 (S.D.N.Y. Sept. 4, 2008))).

Unlike Ross, where the debtor's cause of action did not exist pre-bankruptcy because she did not develop a legally cognizable injury until after she filed her petition, here, all of the facts underlying Plaintiff's NYLL causes of action *did* exist, and thus his claims accrued, pre-bankruptcy. Even if Plaintiff was not aware that those facts created a legally cognizable injury, he cannot escape from the fact that his classification as an independent contractor—a fact he knew—ultimately created a potential cause of action before he filed his bankruptcy petition.

7

Compare with Ross, 548 B.R. at 640-41 (implanted medical device constituted an injury when, post-bankruptcy, it became a harm recognized by the medical community, and therefore failure-to-warn cause of action did not accrue pre-bankruptcy).

Similarly, the Court's reasoning for rejecting an equitable tolling argument in Gustafson v. Bell Atlantic Corp. is particularly relevant here. 171 F. Supp. 2d 311 (S.D.N.Y. 2001). There, the plaintiff unsuccessfully invoked the doctrine of equitable tolling to extend the NYLL statute of limitation. Plaintiff argued defendants concealed his overtime claim by "affirmatively and repeatedly misleading him that he was an independent contractor with no right to statutory overtime." Id. at 323 However, the Court concluded because (i) plaintiff "underst[ood] he was treated as an independent contractor for purposes of payment and compensation," and (ii) there was "no suggestion...defendants attempted to conceal this fact from him," "plaintiff knew the *facts* that would comprise a cause of action under [the NYLL] ...even if he did not know that he had a legal claim" and could not proceed on an equitable tolling theory. Id. Here, Plaintiff also alleges he was underpaid as a result of his classification as an independent contractor, and, like Gustafson, he also "knew the facts that would comprise a cause of action under...New York law" because his contract stated he was an "independent contractor." Id. Moreover, there is nothing to suggest "defendants attempted to conceal" Plaintiff's classification from him, and the mere fact that he did not know such a classification might give rise to a legal claim cannot now be used to revive standing. Cf. id.[1]

---

[1] Plaintiff's citation to Pealo v. AAF McQuay, Inc., 140 F. Supp. 2d 233 (N.D.N.Y. 2001) to support his lack of knowledge defense is also unavailing. In Pealo, counsel, in an effort to cure plaintiff's failure to disclose, reopened the bankruptcy estate and "obtained the Bankruptcy Court's permission to represent the interests of the bankruptcy trustee in the instant action." 140 F. Supp. 2d at 237. Here, there is no attempt to "represent the interests of the bankruptcy trustee"—the very reason why the trustee, not the debtor, has standing to begin with. Therefore, Plaintiff cannot use Pealo's rationale as an end run around his disclosure obligations under the Bankruptcy Code.

Second, ignorance of the law fares no better for Plaintiff. Cf. United States v. Kubrick, 444 U.S. 111, 122 (1979) ("We are unconvinced that for statute of limitations purposes a plaintiff's ignorance of his legal rights and his ignorance of the fact of his injury or its cause" should toll a plaintiff's limitations period). Where the plaintiff is "in possession of the critical facts" or "[t]here are others who can tell him if he has been wronged, and he need only ask," he cannot revive standing by claiming ignorance of the law. Id. Plaintiff knew his contract classified him as an independent contractor and he knew how much he was being paid. Plaintiff could have asked Defendant why he was being classified as an independent contractor before signing his contract, but he cannot now use ignorance of a term prominently featured in a signed agreement to collect a post-bankruptcy windfall that should otherwise be distributed among his creditors. To reward Plaintiff's ignorance would create a loophole for the unscrupulous debtor to evade his creditors following bankruptcy. Goldson v. Kral, Clerkin, Redmond, Ryan, Perry & Van Etten, LLP, 2014 WL 1910624, at *4 (S.D.N.Y. 2014) ("The efficient administration of the bankruptcy system depends on bankruptcy courts, trustees, and creditors all having full and complete information regarding the assets and liabilities of debtors. Debtors therefore have the affirmative and ongoing duty to disclose all of their assets"). And, though Plaintiff claims Whitehurst v. 230 Fifth, Inc., 998 F. Supp. 2d 233 (S.D.N.Y. 2014) revives a plaintiff-debtor's standing to "pursu[e] claims of which he was truly ignorant at the time of his petition," Whitehurst *at most* only *suggests* such a theory might, under some circumstances, be viable, without deciding whether the plaintiff-debtor in that case had standing on that basis. Id. at 257 (noting that while "there is at least a colorable argument that a debtor…should not be precluded from pursuing claims of which he was truly ignorant at the time of his petition" the Court need

not decide as much because the plaintiff-debtor's bankruptcy petition "was dismissed on the grounds of his own unreasonable delay" and his debts were never discharged).

Plaintiff's lack of knowledge and ignorance of the legal significance of the facts underlying his NYLL causes of action do not alter their status as property of the bankruptcy estate. Plaintiff's purported defenses attempt to artificially manipulate when his causes of action accrued without a legal or equitable basis, even though the timing of the facts underlying those causes of action remain immobile.

### C. The New York Fair Play Act Does Not Change the Status of Plaintiff's Claims as Property of the Bankruptcy Estate.

In the alternative, Plaintiff argues his claims did not accrue until 2014, after the filing of his bankruptcy petition, when New York's Fair Play Act ("the Act") became effective. Plaintiff claims the Act *created* his causes of action; however, as Defendant responds, the Act merely codified a new standard for determining whether a particular plaintiff is an independent contractor or an employee in a wage and hour action under the NYLL, but it does not create a new cause of action. N.Y. Labor Law article 25-B. Prior to the Act's passage, courts applied the common law "control test" to determine whether a plaintiff was an independent contractor or an employee. Bynog v. Cipriani Grp. Inc., 1 N.Y.3d 193, 198 (N.Y. 2003). Replacing the control test, the Act establishes (i) a "statutory presumption that a person performing services for a commercial goods transportation contractor shall be classified as an employee unless it is demonstrated that such person is an independent contractor or a separate business entity, and (ii) the "ABC test" for individuals and the "separate business entity test" for incorporated businesses to determine whether the employee presumption could be overcome. N.Y. Labor Law § 861-c;

NY GO Express, Inc. v. New York State Insurance Fund, 77 N.Y.S.3d 854, 856 (N.Y. Sup. Ct. 2018). Neither of these tests create an independent cause of action.[2]

The Act did not create Plaintiff's causes of action—his legal claims arise out of other provisions of the New York Labor Law that pre-date his bankruptcy petition. N.Y. Labor Law §§ 193, 195, 198; Compl., ECF No. 1, ¶¶ 49, 52, 54. Because the Act merely codifies a new standard for evaluating *already existing* causes of action, the fact it was passed post-bankruptcy does not excuse Plaintiff's failure to disclose or otherwise revive Plaintiff's standing to pursue NYLL wage claims in federal court.

II. The Doctrine of Equitable Estoppel Does Not Preclude Defendant from Asserting a Standing Defense.

"The doctrine of equitable estoppel is properly invoked where the enforcement of the rights of one party would work an injustice upon the other party due to the latter's justifiable reliance upon the former's words or conduct." Kosakow v. New Rochelle Radiology Assocs., 274 F.3d 706, 725 (2d Cir. 2001). Plaintiff claims the Defendant contracted with his business to conceal the fact that it was Plaintiff's *de jure* employer and to create the appearance that Plaintiff was an independent contractor. Pl. Opp. Br., ECF No. 55, at 13. In Plaintiff's view, it would be unjust to allow *Defendant*, who concealed Plaintiff's wage claims under the guise of a corporate contract, to move to dismiss those claims on the basis that *Plaintiff* concealed those same claims from his creditors. However, Defendant responds that the doctrine of equitable estoppel does not apply where, as here, "the misrepresentation or act of concealment underlying [Plaintiff's] estoppel claim is the same act which forms the basis of the Plaintiff's underlying causes of

---

[2] Plaintiff's counsel's descriptions of the Act during oral argument belie his assertion that the Act creates a new cause of action. The Act accomplishes what counsel readily acknowledged at oral argument—it clarifies a particular "policy" objective to protect employees in the trucking industry, and it "expands" rights that already exist under the NYLL. However, neither of these goals create a new cause of action.

11

action." Bristol Village, Inc. v. Louisiana-Pacific Corp., 170 F. Supp. 3d 488, 497 (W.D.N.Y. 2016); Tenamee v. Schmukler, 438 F. Supp. 2d 438, 445 (S.D.N.Y. 2006) ("New York law is clear that the same act of non-disclosure cannot underlie both the argument for estoppel and the related cause of action").

Defendant is correct. Equitable estoppel requires at least two wrongful acts—(i) covering up an earlier wrongdoing to prevent plaintiff from (ii) suing on the initial wrong, Smith v. Smith, 830 F.2d 11, 13 (2d Cir. 1987) ("The doctrine of equitable estoppel usually comes into play when some conduct by a defendant *after his initial wrongdoing* has prevented the plaintiff from discovering or suing upon the initial wrong" (emphasis added)))—and to conflate the two would mean "the mere assertion of an underlying wrongful act would always trigger equitable estoppel," Abercrombie v. College, 438 F. Supp. 2d 243, 266 (S.D.N.Y. 2006). Cf. Shu Qin Xu, 111 F. Supp. 3d at 279 ("failure to post notices or provide Plaintiff with statements of hours worked and wages earned" was an "insufficient basis for equitable tolling, as it would provide for equitable tolling whenever a defendant violated FLSA and NYLL by failing to post notices or provide statements of hours and wages").

Plaintiff's equitable estoppel argument is premised on his allegation that Defendant classified him as an independent contractor to conceal his low wages. However, Plaintiff's classification as an independent contractor also forms the basis of his NYLL claims and Plaintiff does not allege Defendant took any *separate* act to conceal his allegedly improper classification. To the contrary, the contract between Plaintiff and Defendant explained Plaintiff was an independent contractor. Plaintiff may have been asked to form an incorporated entity, which facilitated his classification as an independent contractor, but that request (i) came *before* not *after* Plaintiff's classification as an independent contractor, Smith, 830 F.2d at 13, and

(ii) Defendant did not conceal in the contract, or otherwise, Plaintiff's classification. Because the alleged "act of concealment" is the same act underlying Plaintiff's NYLL claims, Plaintiff cannot invoke the doctrine of equitable estoppel to revive his standing.

## CONCLUSION

Defendant's motion to dismiss Plaintiff's Complaint for lack of standing is granted. And, because without standing the Court lacks subject-matter jurisdiction "to entertain the suit" Plaintiff's claims against the non-moving Defendants are also dismissed. In re Indu Craft, Inc., 630 F. App'x 27, 28 (2d Cir. 2015) ("It is well-established that a district court may raise the issue of standing *sua sponte*"). Plaintiff's NYLL causes of action accrued pre-bankruptcy and should have been disclosed in his bankruptcy petition. That Plaintiff knew the facts underlying his causes of action but did not understand or was ignorant of their legal significance is not enough to revive standing. Nor can Plaintiff invoke the doctrine of equitable estoppel to claim his independent contractor classification is an "act of concealment" capable of estopping Defendant's standing defense. Accordingly, the bankruptcy estate trustee, not Plaintiff, has an interest in Plaintiff's NYLL causes of action and Plaintiff does not have standing to pursue his NYLL claims in federal court.

SO ORDERED.

Dated: Brooklyn, New York
      August 7, 2019

s/ Raymond J. Dearie

RAYMOND J. DEARIE
United States District Judge